1

2

3

4

5

6

7

8                                  UNITED STATES DISTRICT COURT

9                            FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DARRYL EDWIN LANG,                             No.  2:15-cv-0624-CKD

12                  Plaintiff,

13        v.                                        ORDER

14   CAROLYN W. COLVIN, Acting
     Commissioner of Social Security,
15
                    Defendant.
16

17

18          Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19   ("Commissioner") denying an application for Child's Insurance Benefits ("CIB") under Title II of

20   the Social Security Act ("Act").  For the reasons discussed below, the court will grant plaintiff's

21   motion for remand and deny the Commissioner's cross-motion for summary judgment.

22   I.     Background

23          Plaintiff, born May 15, 1963, applied on July 26, 2011 for CIB, alleging disability

24   beginning April 30, 1985.[1]  Administrative Transcript ("AT") 17, 19, 23.  Plaintiff alleged he was

25   unable to work due to a learning disability, emotional issues, liver problems, and hepatitis C.  AT

26   _____

27   [1] To be eligible for CIB, plaintiff had to establish that he had a disability before turning 22.  20
     C.F.R. § 404.350(a).  Plaintiff turned 22 on May 14, 1985, two weeks after his alleged onset date.
28   AT 23.

                                                      1

168.  In a decision dated May 23, 2013, the ALJ determined that plaintiff had not been under a disability prior to May 14, 1985, the date on which he attained age 22.   AT 17-23.  The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1.  Born on May 15, 1963, the claimant had not attained age 22 as of April 30, 1985, the alleged onset date.
>
> 2.  The claimant has not engaged in substantial gainful activity since April 30, 1985, the alleged onset date.
>
> 3.  Prior to the date the claimant attained age 22, there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment.
>
> 4.  The claimant has not been under a disability, as defined in the Social Security Act, at any time prior to May 14, 1985, the date he attained age 22.

AT 19-23.

II.    Issues Presented

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled prior to age 22: (1) improperly determined that the record contained no medical signs or laboratory findings to substantiate a finding that plaintiff had a medically determinable impairment prior to the date on which he attained age 22; (2) improperly considered and weighed the medical opinion evidence in the record; and (3) failed to obtain the testimony of a medical expert regarding whether plaintiff's impairments rendered him disabled prior to age 22.

III.    Legal Standards

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ is

2

1  responsible for determining credibility, resolving conflicts in medical testimony, and resolving

2  ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).

3  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one

4  rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

5       The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th

6  Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's

7  conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not

8  affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see

9  also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the

10  administrative findings, or if there is conflicting evidence supporting a finding of either disability

11  or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226,

12  1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in

13  weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

14  IV.  Analysis

15       A. *The ALJ Erred in Determining that the Record Contained no Signs or Laboratory*

16          *Findings to Substantiate the Existence of a Medically Determinable Impairment Prior*

17          *to the Date on Which Plaintiff Attained Age 22*

18       First, plaintiff argues that the ALJ erred by determining that there was no evidence in the

19  record that plaintiff had a medically determinable impairment prior to the date on which he turned

20  age 22 because substantial evidence from the record did not support this finding. More

21  specifically, plaintiff asserts that the mental examination results obtained by Dr. Bowerman as a

22  part of her consultative examination show that plaintiff has a full scale IQ score of 68, AT 224,

23  which places him in the "extremely low" range of mental functioning and indicates that plaintiff's

24  mental impairment was present prior to age 22. Plaintiff also argues that there is evidence in the

25  record that plaintiff attended special education classes during his time in school, got below

26  average grades, and dropped out of high school due to his learning disability, all of which indicate

27  that plaintiff's mental impairment manifested itself before he turned 22.

28  /////

3

1    With regard to the IQ score results, plaintiff acknowledges that they were obtained in

2    December 2012, when plaintiff was 49 years old and roughly 27 years after he reached age 22,

3    but asserts that this temporal distance between the relevant period and the examination does not

4    undermine the probative value of the results because it is generally accepted that a person's IQ

5    score remains fairly constant throughout his or her life.  In support of this assertion, plaintiff cites

6    to a number of cases wherein various federal courts have determined that there is a rebuttable

7    presumption that IQ scores attained through testing administered during adulthood are equally

8    applicable to a claimant's childhood intellectual functioning because such scores remain

9    relatively stable over a person's lifetime.  Plaintiff insists that the court adopt this rebuttable

10   presumption and apply it to the facts of this case to show that plaintiff's mental impairment

11   manifested itself prior to age 22.

12   The Ninth Circuit Court of Appeals has not addressed the rebuttable presumption that

13   plaintiff urges, but a number of other circuits have addressed the issue and have held that such a

14   presumption exists.  See, e.g., Hodges v. Barnhart, 276 F.3d 1265, 1268-69 (11th Cir. 2001) (IQ

15   scores obtained after age 22 "create a rebuttable presumption of a fairly constant IQ throughout

16   life"); Muncy v. Apfel, 247 F.3d 728, 734 (8th Cir. 2001) (("[A] person's IQ is presumed to

17   remain stable over time in the absence of any evidence of a change in a claimant's intellectual

18   functioning."); Luckey v. U.S. Dept. Of Health and Human Services, 890 F.2d 666, 668 (4th Cir.

19   1989); Guzman v. Bowen, 801 F.2d 273, 275 (7th Cir. 1986) (holding that a claimant's IQ score

20   relates back and does not just reflect their intellectual functioning at the time the test is

21   performed).  Furthermore, a large number of district courts within the Ninth Circuit have applied

22   the rebuttable presumption regarding onset of mental limitations prior to age 22.  See, e.g., Vieira

23   v. Colvin, 2013 WL 1195287, at *6-*7 (E.D. Cal. Mar. 22, 2013) (collecting cases and adopting

24   presumption that a claimant's IQ score remains fairly constant throughout his or her life); Flores

25   v. Astrue, 2013 WL 146190, at *4-*5 (C.D. Cal. Jan.11, 2013) (unpublished) (same); Woods v.

26   Astrue, 2012 WL 761720, at *3-*4 (E.D. Cal. Mar. 7, 2012) (adopting rebuttable presumption

27   and finding that "[a]bsent some evidence of a change in cognitive ability or some other persuasive

28   information to account for a change in condition relating to the plaintiff's ability prior to age 22

1   and the date of the IQ testing, there appears to be no factual basis for concluding that the IQ

2   inexplicably dropped after age 22"); Forsythe v. Astrue, 2012 WL 217751, at *7-*9 (E.D. Cal.

3   Jan. 24, 2012) (unpublished) (collecting cases and adopting presumption); Schuler v. Astrue,

4   2010 WL 1443892, at *6 (C.D. Cal. Apr.7, 2010) (unpublished) ("a valid qualifying IQ score

5   obtained by the claimant after the age of 22 creates a rebuttable presumption that the claimant's

6   mental retardation began prior to the age of 22, as it is presumed that IQ scores remain relatively

7   constant during a person's lifetime."); Jackson v. Astrue, 2008 WL 5210668, at *6-*7 (C.D. Cal.

8   Dec.11, 2008) (unpublished) ("several circuits have held that valid IQ tests create a rebuttable

9   presumption of a fairly constant IQ throughout a claimant's life . . . The Court finds the reasoning

10  of the Seventh, Eighth, and Eleventh Circuits to be persuasive."). But see Clark v. Astrue, 2012

11  WL 423635, at *5-*6 (E.D. Cal. Feb.8, 2012) (unpublished) (declining to adopt rebuttable

12  presumption, "especially in a situation where there are glaring discrepancies in the IQ scores in

13  the first place"); Rhein v. Astrue, 2010 WL 4877796, at *8 (E.D. Cal. Nov. 23, 2010) (declining

14  to adopt rebuttable presumption with regard to determining whether the claimant's mental

15  impairment met or equaled listing-level severity because it would have removed the claimant's

16  burden at step three).

17         The court finds those cases adopting the rebuttable presumption test persuasive and, given

18  the circumstances presented by this action, finds it appropriate to apply that presumption to

19  plaintiff's IQ score here.[2]  The record does not contain any IQ scores or other test results

20  regarding mental functioning that appear to conflict with the results of Dr. Bowerman's

21  examination.  Furthermore, there exists evidence in the record indicating that plaintiff had sub-

22  average intellectual functioning prior to age 22, such as evidence showing that he attended special

23

24  _____

[2] The ALJ discounted Dr. Bowerman's opinion regarding the functional impact of plaintiff's
25  mental impairments.  AT 22.  However, he did not contest the validity the objective medical
    results obtained from the psychological testing she conducted on plaintiff as part of her
26  examination, including the IQ score results. For the reasons discussed in further detail below, the
    ALJ's reasons for discounting Dr. Bowerman's opinion were in error.  Nevertheless, even had the
27  ALJ properly discounted Dr. Bowerman's opinion, such a determination would not have
    undermined the validity of plaintiff's IQ score results, nor rebutted the general presumption that
28  plaintiff's IQ score reflected his intellectual functioning prior to age 22.

1    education classes throughout his entire educational career and dropped out of high school due to

2    intellectual difficulties, AT 22, 39-40, 43, 242-45, and no evidence suggesting that plaintiff

3    sustained a traumatic brain injury or other injury after age 22 that would likely impair his

4    intellectual capabilities.  Accordingly, applying the rebuttable presumption analysis, the next

5    question is whether the presumption arising from plaintiff's valid IQ scores is rebutted by the

6    evidence in the record; that is, whether substantial evidence in the record shows that the onset of

7    plaintiff's impairment was actually after age 22.  See, e.g., Woods, 2012 WL 761720 at *3-*4.

8         The Commissioner argues that the evidence in the record showing that plaintiff abused

9    alcohol and methamphetamine as an adult gives rise to a reasonable inference that such lifestyle

10   choices negatively impacted his intellectual functioning after age 22.  However, the ALJ did not

11   provide this reasoning in support of his determination, and the court cannot consider the

12   Commissioner's post hoc rationalizations.  This court reviews the adequacy of the reasons

13   specified by the ALJ, not the post hoc rationalizations of the agency.  See Bunnell v. Sullivan,

14   947 F.2d 341, 345-46 (9th Cir. 1991); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir.

15   2003) (court is constrained to review the reasons the ALJ asserts).  Moreover, the

16   Commissioner's argument regarding the impact of plaintiff's substance abuse amounts to little

17   more than speculation as the Commissioner fails to point to anything in the record indicating that

18   such activities caused plaintiff's intellectual functioning to materially diminish after he reached

19   the age of 22.  Accordingly, the Commissioner fails to rebut the presumption that plaintiff's IQ

20   score indicating "extremely low" intellectual functioning was indicative of plaintiff's mental

21   capabilities prior to age 22.

22        Under 20 C.F.R. § 404.1508, "[a] physical or mental impairment must be established by

23   medical evidence consisting of signs, symptoms, and laboratory findings."  Because it is

24   presumed that plaintiff's extremely low adult full scale IQ score indicates a severe mental

25   impairment and is probative of his intellectual capacity prior to age 22, the ALJ erred in finding

26   ////

27   ////

28   ////

6

that the record contained no medical signs or findings showing that plaintiff had medically

determinable impairment prior to age 22.[3]

Plaintiff also argues that the ALJ's determination that plaintiff did not have any medically

determinable impairments prior to age 22 was erroneous because it was inconsistent with the

ALJ's own finding that plaintiff had moderate difficulties with regard to concentration,

persistence, or pace, which indicated that plaintiff at least had a medically determinable

impairment.   AT 20.  The court agrees.  Under the relevant regulations, an ALJ is required to

address the degree of functional limitation resulting from a mental impairment only if it is

determined that there are "pertinent symptoms, signs, and laboratory findings" showing that the

claimant has a medically determinable mental impairment.  20 C.F.R. § 404.1520a(b) ("[W]e

must first evaluate your pertinent symptoms, signs, and laboratory findings to determine whether

you have a medically determinable mental impairment(s). . . . We must then rate the degree of

functional limitation resulting from the impairment(s) . . . .").  Here the ALJ found that plaintiff

had moderate difficulties with regard to concentration, persistence, or pace, AT 20, but ultimately

determined that "there were no medical signs or laboratory findings to substantiate the existence

of a medically determinable impairment" prior to the date on which plaintiff reached age 22, AT

19.  By finding that plaintiff had a moderate limitation in at least one area of mental functioning,

the ALJ necessarily had to first find that plaintiff had a medically determinable mental

impairment.  See 20 C.F.R. § 404.1520a(b).  However, the ALJ found just the opposite in

determining whether plaintiff had a medically determinable impairment of any kind prior to age

22.  AT 19.  Therefore, the ALJ's conclusion that plaintiff had not been disabled prior to age 22

because he had no medically determinable impairments despite his finding that plaintiff had

---

[3] In addition, while they are not medical signs or laboratory findings, the court also finds that the evidence in the record indicating that plaintiff attended special education classes and dropped out of high school prior to graduation due to learning difficulties provides further support for a finding that plaintiff suffered from a medically determinable mental impairment prior to age 22. See Pedro v. Astrue, 849 F. Supp. 2d 1006, 1011 (D. Or. 2011) (quoting Campbell v. Astrue, 2011 WL 444783, *17 (E.D. Cal. Feb. 8, 2011)) ("A claimant may use circumstantial evidence to demonstrate adaptive functioning deficits, such as 'attendance in special education classes, dropping out of high school prior to graduation, difficulties in reading, writing or math, and low skilled work history.'").

mental limitations was internally inconsistent, and therefore erroneous.[4]

In sum, the ALJ's determination that there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment prior to the date on which plaintiff turned age 22 was not supported by substantial evidence from the record and was internally inconsistent with the ALJ's own findings regarding plaintiff's mental limitations. Accordingly, the ALJ committed prejudicial error in making such a determination.

B. *The ALJ Committed Further Error in Assigning "Reduced Weight" to Dr. Bowerman's Opinion and "Significant Weight" to the Opinions of the State Agency Reviewing Physicians*

Plaintiff asserts that the ALJ committed further error in his consideration of the medical evidence in the record. Specifically, he argues that the ALJ failed to give clear and convincing reasons for discounting Dr. Bowerman's uncontroverted examining opinion and failed to provide substantial evidence in support of his assignment of greater weight to the opinions of the two non-examining physicians in the record.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record,

---

[4] The ALJ did not specify in his decision whether he determined that plaintiff's moderate limitation with regard to concentration, persistence, or pace was with respect to his mental functioning at the time of the hearing, or with respect to his functioning during the relevant period, i.e., prior to age 22. Nevertheless, the ALJ's determination that plaintiff did not have a medically determinable impairment prior to age 22 would still have been erroneous in light of the ALJ's findings regarding plaintiff's mental limitations even if the ALJ intended those limitations to reflect plaintiff's mental functioning at the time of the hearing because the unrebutted presumption that plaintiff's adult IQ scores reflected his mental capabilities over the course of his lifetime indicates that the mental limitations the ALJ found plaintiff to have as an adult would relate back to plaintiff's childhood mental functioning.

1   and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a

2   treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81

3   F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be

4   rejected for "specific and legitimate" reasons that are supported by substantial evidence.  Id. at

5   830.  While a treating professional's opinion generally is accorded superior weight, if it is

6   contradicted by a supported examining professional's opinion (e.g., supported by different

7   independent clinical findings), the ALJ may resolve the conflict.  Andrews v. Shalala, 53 F.3d

8   1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  In

9   any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical

10  findings.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory,

11  minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a

12  non-examining professional, without other evidence, is insufficient to reject the opinion of a

13  treating or examining professional.  Lester, 81 F.3d at 831.

14          Here, the ALJ gave "reduced weight" to the consultative examining opinion of Dr.

15  Bowerman for the following reasons:

16          Dr. Bowerman's opinion is given reduced weight as it is based on a single
17          examination of the claimant and there are internal inconsistencies between the
            findings upon examination, the diagnoses and the residual functional capacity
18          determined to be appropriate for the claimant.  Dr. Bowerman found marked
            impairment in the claimant's memory yet he was able to report all relevant social,
19          educational, legal, and medical history from memory.  Similarly, Dr. Bowerman
            found marked impairment in the claimant's attention and concentration yet also
20          observed the claimant's attention and concentration were within normal limits.
            Further, due to a lack of medical records showing treatment, it is difficult to
21          ascertain the degree of impairment.  Finally, despite the claimant's allegations of
22          childhood disability, the claimant's medical records don't begin until well after the
            age of 22 in 1985.
23

24  AT 22.  Plaintiff argues that these reasons were not clear and convincing reasons for discounting

25  Dr. Bowerman's opinion supported by substantial evidence.  The Commissioner appears to

26  concede that Dr. Bowerman's was uncontroverted, thus requiring the ALJ to meet the more

27  stringent "clear and convincing" standard in order to properly support his determination.  She

28

1  asserts, however, that this standard was met.  For the reasons discussed below, the court finds

2  plaintiff's argument persuasive.  The ALJ erred in considering Dr. Bowerman's opinion.

3        First, the ALJ improperly discounted Dr. Bowerman's opinion because it was based on a

4  single examination of plaintiff.  While examination frequency is a proper consideration when

5  weighing medical opinion evidence, see 20 C.F.R. § 404.1527(c)(2)(i), substantial evidence does

6  not support the ALJ's decision to discount Dr. Bowerman's opinion under the circumstances

7  presented in this case.  Dr. Bowerman was the only physician in the record to conduct objective

8  psychological testing on plaintiff and provide an opinion based on a full mental examination.  AT

9  221-32.  Neither of the state agency reviewing physicians to whom the ALJ gave greater weight

10  examined plaintiff and none of plaintiff's treating physicians provided opinions regarding

11  plaintiff's mental functioning based on an examination.

12        The ALJ also erred in his reasoning that Dr. Bowerman's opinion that plaintiff had a

13  marked impairment regarding memory conflicted with her examination notes indicating that

14  plaintiff was able to report all relevant social, educational, legal, and medical history from

15  memory.  Dr. Bowerman's examination notes provide that plaintiff stated during the examination

16  "that he has no medical conditions," but that the "records that arrived after his appointment

17  [demonstrated] that [plaintiff] has hepatitis C and liver problems."  AT 221.  This is contrary to

18  the ALJ's assertion that Dr. Bowerman's notes show that plaintiff had a good memory regarding

19  his medical history.  Furthermore, Dr. Bowerman's notes also reveal that plaintiff obtained scores

20  in the "extremely low" range with regard to all areas of memory after undergoing a battery of

21  objective memory tests.  AT 225.  In short, the record does not contain substantial evidence to

22  support the ALJ's reasoning that Dr. Bowerman's examination notes were inconsistent with her

23  opinion regarding plaintiff's memory.

24        Similarly, substantial evidence does not support the ALJ's finding that Dr. Bowerman's

25  opinion that plaintiff had a marked impairment in the areas of attention and concentration was

26  undermined by her observation that plaintiff's attention and concentration were within normal

27  limits.  Dr. Bowerman noted that plaintiff's "concentration and task persistence were good," but

28  made that observation with regard to validity of the psychological test results plaintiff obtained

1    and in support of her determination that plaintiff's results were an accurate reflection of his

2    mental functioning.  AT 223.  Contrary to the ALJ's reasoning, this observation did not conflict

3    with her opinion that plaintiff was markedly impaired in "[h]is ability to *maintain* concentration,

4    attention and for pacing and tracking," AT 227 (emphasis added), and Dr. Bowerman does not

5    indicate elsewhere in her examination notes that plaintiff was capable of concentrating on a

6    sustained basis.

7         Finally, the ALJ's last stated reason for discounting Dr. Bowerman's opinion, that

8    plaintiff's medical records don't begin until well after he turned age 22, was also not a clear and

9    convincing reason under the circumstances presented here.  As discussed above, the full scale IQ

10   score Dr. Bowerman obtained indicated that plaintiff had "extremely low" intellectual functioning

11   and there is a presumption that that score had been consistent throughout plaintiff's life, including

12   before he reached the age of 22.  Accordingly, the fact that plaintiff's medical records in the

13   record addressing his intellectual functioning were not obtained until plaintiff was well into

14   adulthood was not a clear and convincing reason for assigning reduced weight to Dr. Bowerman's

15   opinion.

16        Plaintiff also correctly argues that the ALJ erred in assigning greater weight to the

17   opinions of the state agency non-examining physicians who opined that there was insufficient

18   medical evidence in the record from the relevant period to establish childhood disability on the

19   basis that they were consistent with the record as a whole.  First, these opinions were developed

20   before Dr. Bowerman conducted the psychological testing that indicated that plaintiff's

21   intellectual functioning was in the extremely low range.  Neither of the non-examining physicians

22   had an opportunity to review Dr. Bowerman's objective clinical findings despite the fact that they

23   were presumptively probative of plaintiff's intellectual functioning during the relevant period.

24   Outside of Dr. Bowerman's uncontroverted opinion, none of the other clinical evidence in the

25   record provides findings pertinent to plaintiff's mental functioning during the relevant period.

26   The reviewing physicians acknowledged this fact by noting in their opinions that there was no

27   medical evidence in the record they reviewed that was relevant to the time period at issue.  AT

28   54-67.  While their earlier opinions may have been reasonable based on the evidence available to

1    them at the time, the results regarding plaintiff's mental functioning obtained from Dr.

2    Bowerman's examination constituted new and material evidence signifying that plaintiff was

3    more functionally limited during the relevant period than what the record had previously

4    indicated.   Because the non-examining physicians did not review this new and material evidence,

5    it was error for the ALJ to rely on their opinions to support his determination that there was no

6    medical evidence in the record that plaintiff had a medically determinable impairment prior to age

7    22.

8              C. *The ALJ's Errors Warrant Remand for Further Administrative Proceedings*

9              Plaintiff argues that the ALJ's errors warrant remand for further administrative

10   proceedings pursuant to sentence four of 42 U.S.C. § 405(g).  The court agrees.

11             When the court finds that the ALJ committed prejudicial error, it has the discretion to

12   remand or reverse and award benefits.  McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).

13   Generally, if the court finds that the ALJ's decision was erroneous or not supported by substantial

14   evidence, the court must follow the "ordinary remand rule," meaning that "the proper course,

15   except in rare circumstances, is to remand to the agency for additional investigation or

16   explanation."  Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014).  A

17   remand for an award of benefits is inappropriate where the record has not been fully developed or

18   there is a need to resolve conflicts, ambiguities, or other outstanding issues.  Id. at 1101.

19             Here, the ALJ erroneously found plaintiff not disabled prior to age 22 based on a wrongful

20   determination that there were no medical signs or laboratory findings in the record to substantiate

21   the existence of a medically determinable impairment.  While the ALJ also briefly discussed

22   whether plaintiff's mental impairments met or equaled the requirements of Listing 12.05, finding

23   that they did not, he did not continue on with his analysis to the subsequent steps of the sequential

24   analysis.  Accordingly, given that there is medical evidence in the record presumed to accurately

25   reflect plaintiff's mental functioning during the relevant period, i.e., plaintiff's valid full scale IQ

26   score, remand is warranted in order for the ALJ to properly consider what, if any, functional

27   limitations stemmed from this presumed level of mental functioning during the relevant period.

28   Furthermore, further administrative proceedings are warranted to allow the ALJ an opportunity to

1    properly consider and weigh Dr. Bowerman's opinion regarding plaintiff's mental functional

2    limitations in light of the presumption that the psychological test results obtained through her

3    examination of plaintiff relate back to plaintiff's mental functioning during the relevant period.

4         On remand, the ALJ should consider the functional impact of plaintiff's presumed level of

5    mental functioning during the relevant period in light of the record as a whole.  Furthermore, the

6    ALJ should reconsider Dr. Bowerman's examining opinion in light of the presumption that

7    plaintiff's full scale IQ score accurately reflected plaintiff's intellectual abilities during the

8    relevant period, and, if he chooses not to rely on that opinion, should provide clear and

9    convincing reasons for discounting it, or, if the ALJ chooses to further develop the record and

10   there exists conflicting opinion evidence, specific and legitimate reasons.  The ALJ is free to

11   develop the record in other ways, as needed.

12        Importantly, the court expresses no opinion regarding how the evidence should ultimately

13   be weighed, and any ambiguities or inconsistencies resolved, on remand.  The court also does not

14   instruct the ALJ to credit any particular opinion or testimony, including the opinion of Dr.

15   Bowerman.  The ALJ may ultimately find that plaintiff was disabled prior to age 22, or may find

16   the evidence in the record insufficient to show that plaintiff was disabled at any time during that

17   period—provided that the ALJ's determination complies with applicable legal standards and is

18   supported by substantial evidence in the record as a whole.

19        D.  *Other Issues*

20        Plaintiff also argues that the ALJ committed further prejudicial error because he did not

21   obtain the testimony of a medical expert regarding whether plaintiff's impairments began prior to

22   age 22.  Given that remand is warranted for the reasons discussed above, the court declines to

23   address this additional issue at this time.  On remand, the ALJ will have an opportunity to

24   reconsider the evidence in the record, and to further develop the record, if necessary, in light of

25   the presumption that plaintiff's full scale IQ score and other objective intellectual functioning test

26   results in the record relate back to his intellectual functioning during the relevant period.  In doing

27   so, the ALJ may find it helpful, or possibly even necessary, to obtain testimony from a medical

28   expert to assist him in properly determining whether plaintiff suffered a mental impairment prior

1   to age 22 that rendered him disabled within the meaning of the Act.  Accordingly, at this juncture,

2   the court will leave it to the ALJ's discretion to determine whether to call a medical expert to

3   testify as to this topic on remand.

4   V.      CONCLUSION

5          For the reasons stated herein, this matter will be remanded under sentence four of 42

6   U.S.C. § 405(g) for further development of the record and for further findings addressing the

7   deficiencies noted above.  Accordingly, IT IS HEREBY ORDERED that:

8          1.  Plaintiff's motion for summary judgment (ECF No. 13) is granted for purposes of

9   further development and reconsideration of the record consistent with the court's directions set

10   forth above;

11          2.  The Commissioner's cross-motion for summary judgment (ECF No. 14) is denied; and,

12          3.  This matter is remanded for further proceedings consistent with this order.

13   Dated:  February 10, 2016

14                                          _____
                                           CAROLYN K. DELANEY
15                                          UNITED STATES MAGISTRATE JUDGE

16

17

18

19   11 lang0624.ss.cib

20

21

22

23

24

25

26

27

28

14